# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE BURLINGTON NORTHERN AND SANTA FE RAILROAD COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 03-CV-162-JHP-SAJ |
| SPIN-GALV, A DIVISION OF ROGERS GALVANIZING COMPANY, CHARLES B. GRANT, ELISE P. GRANT, ELISE P. GRANT TRUST, CHARLES B. GRANT REVOCABLE TRUST AND MCJUNKIN CORPORATION (FORMERLY KNOWN AS GRANT PIPE SUPPLY) | ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |

### **ORDER:**

Now before the Court is Charles B. Grant's ("Defendant") Motion for Attorneys Fees [225-1], the Burlington Northern and Santa Fe Railroad's ("Plaintiff") response [240-1], the Defendant's Reply [246-1], the Defendant's first supplement [247-1], and the Defendant's second supplement [254-1]. In addition, the Court conducted a hearing on January 26, 2005 for oral arguments on the motions. For the reasons stated herein, the Defendant's motion is GRANTED in part and DENIED in part.

### **BACKGROUND:**

The Plaintiff filed this cause of action alleging property damage due to trespass and nuisance and a violation of the Resource Conservation and Recovery Act ("RCRA") on March 7,

1

2003. The Plaintiff's complaint alleged that a tar-like material ("TLM") gradually migrated from the Defendant's property onto that of the Plaintiff's rail yard in Tulsa, Oklahoma. The case was originally assigned to a different District but it was later reassigned to the undersigned in July 2003 after the other Judge recused from the case.

Early in the case, the Defendant filed a motion to dismiss the RCRA claims for lack of subject matter jurisdiction on May 19, 2003. This Court denied the Defendant's motion to dismiss on October 7, 2003. The Defendant then filed a number of pleadings regarding discovery over the months following the Court's order and participated in a settlement conference.

Then, on August 6, 2004, the Defendant began to flood the Court with various pleadings in the case. The first of those pleadings was a motion to dismiss for spoliation of evidence. After ordering expedited responses and holding a hearing on the motion, the Court denied the Defendant's motion by minute order on September 15, 2005, the denial of that motion by minute order, however, should not be interpreted as a reflection of the complexity or merit of the Defendant's motion.

Also, during the month of August 2004, the Defendant filed numerous motions and responses to motions. Those motions included motions in limine and Daubert motions, some of which were granted and others that were denied. The Defendant also was required to file deposition designations, proposed jury instructions, trial briefs, a pretrial order, and an amended pretrial order. Moreover, the Court held hearings that lasted more than a full day to address some of the motions submitted and to discuss the trial.

Finally the Defendant filed a Motion for Summary Judgment. The Court granted in part and denied in part the Defendant's motion for summary judgment on October 5, 2004. The Court notified the parties by Minute Order that the trial would commence on October 20, 2004, along with that order, the Court denied the Defendant's supplemental motion for summary judgment as there were some questions to be decided by a jury.

Once the case proceeded to trial as scheduled, the Plaintiff rested its case and the Defendant promptly moved for judgment pursuant to Rule 50. The Court granted the Defendant's motion for Rule 50 judgment. Because the Rule 50 order coupled with the summary judgment order covered all of the Plaintiff's claims against the Defendant, the jury trial was concluded on October 22, 2004 and the Court entered judgment in favor of the Defendant.

## DISCUSSION:

Generally, each party to a lawsuit is to pay its own costs and attorney's fees that are incurred in the litigation–this is oftentimes called the "American Rule." *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683-84 (1983). This is true unless there is some statutory provision that explicitly provides for attorney's fees and costs. Under Oklahoma Law, a prevailing party in an action seeking recovery for property damage is entitled to a reasonable attorney's fee. Specifically,

> In any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action.

12 Okla. Stat. § 940. Moreover, RCRA allows for the imposition of attorney's fees "to the prevailing or substantially prevailing party, whenever the court determines such an award is

3

appropriate." 42 U.S.C. § 6972(e). Under either standard, the attorney's fees awarded must be reasonable.

In this case, the Defendant was the prevailing party. Many of the Plaintiff's claims were resolved in the Court's order granting summary judgment in part. The remaining claims were resolved after the Plaintiff had rested at trial and the Court granted the Defendant's Rule 50 motion. Thus, the Defendant prevailed on each claim that was brought against it.

Even though the Defendant was the prevailing party in the lawsuit, attorney and expert fees are only available to the prevailing party in an RCRA action when the action was frivolous, unreasonable, or without foundation. *See e.g. Christianburg Garment Co. V. EEOC*, 434 U.S. 412, 421 (1978); *see also Ruckelshaus*, 463 U.S. at 704; *Orchard Lane Rd. Assn. v. Pete Lien & Sons, Inc.*, 1994 WL 18031. The Plaintiff argues that this standard has not been met and that a fee and costs award is not proper under the RCRA. The Defendant counters that the RCRA claims were meritless and without a factual basis as evidenced, *inter alia*, by the Court's order requiring the Plaintiff to specifically provide statutory provisions that were violated.

The Court, after reviewing the record and the parties' motions, holds that the filing of the RCRA claim by the Plaintiffs was not frivolous. While the Plaintiff's did not provide the Defendant or the Court with the actual statutory provisions to support a claim pursuant to 42 U.S.C. § 6972(a)(1)(A), the dismissal of that claim was for procedural versus substantive defects. *See* Court's Order Granting Summary Judgment in Part, docket number 209 at 3 ("Because of Plaintiff's failure to specifically outline which 'permit, standard, regulation, condition, requirement, prohibition, or order' as envisioned by (a)(1)(A) until ordered to do so by this Court less than one week before trial, the Court has dismissed that cause of action

4

because of the prejudice to the Defendant that would result from proceeding."). Moreover, even though the Court did not find the TLM to constitute an "imminent and substantial endangerment to health or the environment" because of the duration of time the material was present before removal without any signs of adverse health consequences, the information provided by the Plaintiff that suggests the TLM contained carcinogenic characteristics makes the filing of the lawsuit at least reasonable.

Therefore, the Court finds that the Plaintiff's causes of action pursuant to RCRA were not frivolous and attorney's fees and expert fees are not proper. As a result, the expert witness fees sought by the Defendant will not be granted, this amount totals $70,960.35. However, the attorney's fees will not be reduced because of the close interrelationship between the RCRA claim and the other claims where attorney's fees are proper as discussed more fully below.

The Plaintiff next claims that the amount of fees sought by the Plaintiff for the lawsuit is unreasonable and should be reduced accordingly. *Ramos v. Lamb*, a Tenth Circuit decision, provides the framework within which the district courts are to analyze and award attorney fees. 713 F.2d 546 (10th Cir. 1983); *see also Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245 (2005*).* In *Ramos*, the Court notes that it has referred to the *Johnson v. Ga. Hwy. Express, Inc.* factors for computing attorney fee awards. *See Ramos*, 713 F.2d at 552 (citing *Johnson*, 488 F.2d 714 (5th Cir. 1974)). The *Johnson* factors consist of, 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation,

and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19. In *Ramos*, the Court recognized that oftentimes many of the factors were not always useful in the analysis.

As a result, the Tenth Circuit, using the twelve *Johnson* factors, provided the courts with the necessary "guidance in assessing and applying the relevant factors to produce a monetary award." 713 F.2d at 552. The first inquiry, according to the Court, is to determine what constitutes a reasonable fee and then multiply that number by the number of reasonable hours worked on the case. *Id.* Next, the court must ascertain whether the party seeking fees is subject to any reduction in those fees for a failure to prevail on one of the claims. *Id.* at 556. Conversely, the court may enhance the fees if the representation was performed with "exceptional success." *Id.* at 557. Then, the *Ramos* Court notes that the Court should determine the reasonableness of other expenses incurred by the attorneys. *Id.* at 559.

First, the Plaintiff contests that the number of hours expended by the Defendant's attorneys in this action was unreasonable. In analyzing the reasonableness of the hours spent, "The district court must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation. . . . the district court should distinguish 'raw' time from 'hard' or 'billable' time to determine the number of hours reasonably expended." *Id.* at 553.

In this case, the Court finds that the number of hours billed by the Defendant's counsel is reasonable. There were as many as thirteen people who worked on this case during the year and a half that it was pending, those people ranged from the most senior partner in the law firm to

6

summer law clerks and paralegals. The total number of hours expended during the lawsuit was 2323.95. The Court does not find the number of hours to be unreasonable considering the complex nature of the case. The complexity of the case is evident from the extensive number of filings, the necessity of expert witnesses, and the subject matter of the litigation. Moreover, the Court held several hearings for which counsel was required to prepare, examine witnesses, and make oral arguments. As a result, the Court finds that the number of hours expended by the Defendant's counsel was reasonable.

Second, the Court must determine whether the hourly rate charged by the attorneys and other members of the Defendant's counsel team was reasonable. This requires the Court to "determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Id.* at 555. The Court should also consider "[t]he quality of the lawyer's performance in the case." *Id.* Furthermore, the determination of a reasonable rate is to be established by looking at the prevailing rate in the Tulsa, Oklahoma area. *See Praseuth*, 406 F.3d at 1259.

Here, the Defendant's counsel seeks fees at the hourly rates as follows:

| | |
|---|---|
| Sam P. Daniel | $300 per hour |
| Varley H. Taylor | $250 per hour |
| Linda Martin | $235 per hour |
| Chad Hinrichs | $160 per hour |
| Young Pei | $145-$150 per hour |
| Lesley R. Ford | $135 per hour |
| Shawna Baker | $135 per hour |
| Lesley F. Richer | $135 per hour |
| Mia Johnson | $90 per hour |
| Marilyn S. Schooling | $85 per hour |
| Mona L. McCune | $85 per hour |
| Rhonda Leeds | $85 per hour |
| Angela Harris | $85 per hour |

7

*See* Defendant's Motion for Costs and Attorney Fees at Ex. 1.  In support of those fees, the Defendant submitted an affidavit by A. Scott McDaniel, a partner in a Tulsa law firm that specializes in environmental litigation, indicating that the rates charged by the Defendant's counsel were reflective of the typical rate in the Tulsa area.  The Plaintiff attaches an affidavit from Peter Bradford, an Oklahoma City attorney, where he states that the fees are unreasonable.  The Plaintiff's affidavit is not persuasive, though, as the Circuit authority clearly requires the attorney's fees to be based on the prevailing rate in the jurisdiction where the case was litigated.  *See Praseuth*, 406 F.3d at 1259.  Thus, the prevailing market rate in this case is that charged in Tulsa, Oklahoma.

After reviewing the records and applying its knowledge of the Tulsa, Oklahoma legal community, the Court finds that the hourly rate charged by Sam P. Daniel shall be reduced from $300 per hour to $250 per hour and the rate for Varley H. Taylor shall be reduced from $250 per hour to $225 per hour.  The Court finds that the other rates charged by the Defendant's counsel, including those for Marilyn Schooling[1] and Linda Martin, are indeed reasonable based upon their experience and specialized knowledge of environmental law.  Each of the attorneys are highly qualified and skilled in litigation practices and have great experience.  Moreover, many of the people from the law firm who worked on this case have specialized knowledge in the environmental arena.  Therefore, the total reasonable amount of fees shall be reduced from $394,509.37 to $391,333.12 to reflect the reduction of Mr. Daniel's and Mr. Taylor's hourly rate.

---

[1] The Court notes that the separate billing for law clerks and paralegals is common practice in the Tulsa legal community, so full compensation for their time is proper under the guidance of *Ramos*.  713 F.2d at 558.

8

Third, the Court is to determine whether there is any reason to reduce the fee award for any reason. The Plaintiff suggests that the award should be reduced for the number of hours spent conducting background research or for conferencing. Specifically, the Plaintiff argues that the total number of 401.75 hours of conference time should be deducted. The Court, however, finds that the amount of conference time is reasonable in this case, which was pending for more than one year and the total number of hours was in excess of 2300. Planning and strategy sessions are a crucially important component to the successful representation of clients as each of the attorneys and staff members working on the case should be working toward the same final product. The Plaintiff further argues that the background research totaling 31 hours should be deducted from the fee amount. Again, the Court finds that this work in treatises and legal encyclopedias was a reasonable use of time. In fact, with the complex nature of the case, the multitude of claims involved, and the extensive nature of the pleadings, secondary source research may have provided the most efficient manner to sort through the issues. It is also apparent that the Defendant's attorneys were not using the secondary sources to be introduced to the subject of the litigation, as they were all knowledgeable of environmental law. Instead, the use of the sources was likely an attempt to strengthen the research on the complex issues of law that were presented to the Court.

In addition, the Plaintiffs argue that the Defendant should not be awarded fees for the failed motion to dismiss and other failed motions. However, as the Supreme Court has stated,

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . Litigants in good faith may raise alternative grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a

9

fee. The result is what matters.

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). In this case, the Defendant certainly achieved excellent results in the litigation. The Defendant prevailed on every cause of action brought by the Plaintiff. And, each of the motions that were filed by the Defendant was seemingly done so in good faith and each of them required the Court to carefully scrutinize the law before making its decision. Therefore, the fees should not be reduced for unsuccessful attempts on the part of the Defendant in this case.

For this same reason, there should be no deduction in the amount of fees spent by the Defendant for the work performed on the RCRA action, despite the Court's earlier finding that fees under RCRA are not proper. The Supreme Court has outlined that a reduction of fees is only proper where the claims are unrelated or where the party did not prevail on them. *See id.* at 435. Because all of the claims in this case arose out of the same set of facts, alleged migration of TLM from the Defendant's property onto that owned by the Plaintiff, the separation of the claims and reduction of fees is not proper. Thus, there will be no reduction.

Fourth, the Court must look at the expenses occurred during the litigation to determine their reasonableness. The fees at issue in this case are those spent by the Defendant for Westlaw research which totaled $4,617.00, delivery and long-distance telephone charges which totaled $1,620.28, and attorney travel expenses which totaled $762.14. With regard to fees such as these, the Tenth Circuit has provided some guidance. "Items that are normally itemized and billed in addition to the hourly rate should be included in fee allowances . . . if reasonable." *Ramos*, 713 F.2d at 559. If the fees are normally billed and are not considered a part of the firm's overhead costs, then they are properly included in the fee application. Here, according to

the affidavit of Linda Martin, the fees requested are all separately billed by the Defendant to its clients. And, after looking at those fees the Court finds them reasonable in nature.

The Plaintiff specifically takes issue with the Westlaw research costs. In support of its argument, the Plaintiff suggests that the legal issues were straightforward and the cases cited were all available in a law library or on the Internet. Because of the non-novel nature of the issues and the availability of the information in other places, the Plaintiff contends that the fees should not be allowed. The Court finds, however, that the fees are indeed proper. As the world becomes more computer and technically literate, the value of online resources such as Westlaw is becoming increasingly important to the legal community. In fact, more often than not the use of Westlaw reduces the number of hours worked by attorneys in researching various issues of the law; thus, attorneys are more efficient and are able to bill less time than they might otherwise bill if spent researching in books. Moreover, as the world becomes more technical many law firms, and even courthouses, are reducing the size of or even doing away with their law libraries, thus mandating the use of an online service such as Westlaw or Lexis. Because holding that Westlaw research should not be charged by the Defendant in its fee application would be harmful to the bar and because the Court believes that Westlaw research often leads to increased efficiency of the lawyers, the Court hereby finds that the fees charged for Westlaw use are proper.

Finally, the Court must determine whether the total fee request has a reasonable relation to the Defendant's exposure in the litigation. In this case, the Plaintiff was alleging actual damages in the amount of $469,000.00 of which only $310,500 was still at issue as a result of settlements with other Defendants. The Plaintiff argues that a request of more attorney's fees than the amount of actual damages is unreasonable. The Plaintiff, however, does not mention

that it was also seeking punitive damages, attorney fees, and interest in the action. Therefore, the actual exposure to the Defendant in the case was considerably larger than the $469,000 of actual damages. Furthermore, the Court notes that the other Defendants did not settle out of the case until close to the end of the litigation and that a large portion of the Defendant's fees had already been incurred at that point when the amount at issue was still at the $469,000 level of actual damages. Looking at the totality of the circumstances, the Court finds that the fee request is reasonably related to the exposure faced by the Defendant.

In the Defendant's second supplement to the motion for attorney's fees the amount of time and fees expended in preparation of the application for fees was submitted. The Defendant is seeking fees in the amount of $23,493.32 for approximately 141 hours during the months from November 2004 to January 2005. During that time period, the Court conducted a hearing on attorney's fees and numerous briefs were filed by both parties. The Court again finds that the rates charged by Linda Martin, Young Pei, and Marilyn Schooling were reasonable for the preparation of an attorney's fees application. However, the Court finds that the total number of hours was not reasonable. Because the Court finds that the number of hours spent on the application is excessive, the amount of those fees shall be reduced by 50%, from $23,493.32 to $11,746.66.

The Defendant also seeks recovery of its copying fees acquired when completing the attorney's fees applications and briefs. The amount requested totals $1,402.05 which covers expensive color copying of exhibits to provide at the hearing and to opposing counsel, postage charges, and Westlaw charges. Upon review of the Defendant's filings concerning the attorney's fees, it has come to the Court's attention that there were no color copies submitted in the

Defendant's motion. Perhaps the Defendant provided color copies to opposing counsel in preparation, but the Court does not find that color copies would have been of any aid in determining the reasonableness of this application. Therefore, the Court finds that the color copy costs acquired by the Defendant are unreasonable and shall be excluded, resulting in a total costs reduction of $262.18. The total amount of costs awarded for the preparation of the attorney's fees application shall be $1139.87.

## **CONCLUSION:**

Therefore, the Court hereby finds that the total amount of attorney's fees awarded to the Defendant for prevailing in this litigation and achieving excellent results is $411,218.99, this amount reflects a reasonable number of hours, a reasonable hourly rate, and reasonable fees for other expenses incurred by the Defendant's counsel throughout this litigation. The Defendant's expert witness fees are denied as the Court finds the RCRA actions were not frivolous despite being unsuccessful. Thus, the Defendant's Motion for Attorney's Fees is hereby GRANTED in part and DENIED in part.

IT IS SO ORDERED this 29th day of July 2005

_____
James H. Payne
United States District Judge
Northern District of Oklahoma