IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY,

Plaintiff,

vs.

Case No. 03 CV 162 P(J)

SPIN-GALV, A DIVISION OF ROGERS GALVANIZING COMPANY, CHARLES B. GRANT, ELISE P. GRANT, ELISE P. GRANT TRUST, CHARLES B. GRANT REVOCABLE TRUST, and GRANT PIPE SUPPLY,

Defendants.

**JOINT MOTION FOR ENTRY OF FINAL ORDER OF DISMISSAL**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW the BNSF Railway Company formally known as The Burlington Northern and Santa Fe Railway Company, Plaintiff, and Charles B. Grant, Individually and as Trustee of the Charles B. Grant Revocable Trust, and files this their Joint Motion for Dismissal of Claims. The parties jointly request the Court to enter the Final Order of Dismissal attached hereto.

Respectfully submitted,

David E. Cowen by LCMartin w/permission

David E. Cowen
McLeod, Alexander, Powel & Apffel
802 Rosenberg, P.O. Box 629
Galveston, TX 77553
(409) 763-2481 Fax: (409) 762-1155

Hugh D. Rice by L Martin w/permission
Hugh D. Rice
Rainey, Ross, Rice & Binns, PLLC
735 First National Center West
Oklahoma City, OK 73102-7495
(405) 234-1356 Fax: (405) 235-2340

*Attorneys for The BNSF Railway Company*

Linda C. Martin
Sam P. Daniel
Linda C. Martin
Doerner, Saunders, Daniel & Anderson, L.L.P.
320 South Boston Ave., Suite 500
Tulsa, OK 74103-3725
(918) 591-5307 Fax: (918) 925-5307
*Attorneys for Charles B. Grant and the Charles B. Grant Revocable Trust*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY,**<br>**Plaintiff,**<br><br>**v.**<br><br>**SPIN-GALV, A DIVISION OF ROGERS GALVANIZING COMPANY, CHARLES B. GRANT, ELISE P. GRANT, ELISE P. GRANT TRUST, CHARLES B. GRANT REVOCABLE AND TRUST AND GRANT PIPE SUPPLY**<br>**Defendants.** | ) | **C.A. NO. 03-CV-162-P(J)**<br>**JURY DEMANDED** |

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual Release and Settlement Agreement ("Agreement"), entered into as of the latest date signed below, is by and between The BNSF Railway Company formerly known as The Burlington Northern and Santa Fe Railway Company hereinafter ("BNSF") and Charles B. Grant, individually and as Trustee of the Charles B. Grant Revocable Trust and on behalf of said Trust (collectively referred to herein as "Grant")

The signatories to this Agreement are collectively referred to as the "Parties" hereto. Any reference to a corporate entity in this Agreement shall include its agents, officers, directors, employees, affiliates, divisions, parent companies, subsidiaries or anyone acting on behalf of any of the foregoing except its attorneys. Any reference to any individual or trust shall include their agents, heirs, assigns or anyone acting on behalf of same except their attorneys or anyone claiming by, through or under same.

EXHIBIT 1

1.      BNSF is a Delaware corporation, which is licensed to do business in the State of Oklahoma.  BNSF is the owner of the property known as the Cherokee Rail Yard in Tulsa, Oklahoma bordered on the east by property owned, in part, by Grant more particularly described as Tracts A and B on the attached Exhibit 1(incorporated herein by reference) (hereinafter "Grant Property").

2.      The BNSF has asserted that a tar-like material migrated from the Grant Property onto the BNSF's Cherokee Rail Yard and has alleged damages resulting therefrom.  The BNSF also asserted that it constructed a barrier berm on the border of property belonging to the BNSF, more particularly described as Tract C on the Attached Exhibit 1.

3.      BNSF filed suit against Grant in the United States District Court for the Northern District of Oklahoma (C.V. NO. 03-CV-162-P (J) (the "Lawsuit").  Other defendants, who are not participants in this Agreement, were joined in the lawsuit and have subsequently settled or have been dismissed.

4.      BNSF claims that Grant is a responsible Party under the common and statutory law of the State of Oklahoma for private and public nuisance, contribution and unjust enrichment as well as under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq. ("RCRA"). As such, BNSF sought contribution and reimbursement from Grant in connection with the BNSF's remediation of the tar-like material it has alleged migrated onto the Cherokee Yard from the Grant Property, and injunctive relief regarding the presence of this tar-like material on the Grant Property.

5.      Grant has denied all liability and wrong doing under any theory or claim asserted by the BNSF.

6.      To avoid the uncertainty, substantial expense, inconvenience and burden of continued litigation, and to put to rest all controversy, the Parties hereto desire to settle and compromise, completely and finally, all matters in dispute among themselves relating to the facts giving rise to the Lawsuit.

7.      Without admitting liability but only to purchase peace and avoid the costs of further litigation, the Parties hereto have agreed to execute this Agreement.  It is the purpose of this Agreement and the intent of the Parties hereto to finally and forever settle and compromise their disputes and to release, discharge and quitclaim all claims and causes of actions, known or unknown, relating to the facts giving rise to the Lawsuit.

8.      In consideration of the recitals set forth above and the mutual covenants, agreements, warranties, representations, terms, conditions and releases set forth below, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, BNSF and Grant agree to the following:

a)      Charles B. Grant ("Grant") will pay Burlington Northern and Santa Fe ("BNSF") the sum of $190,000.00 in full settlement of the suit, payable within sixty (60) days of execution hereof.

b)      Upon payment BNSF will dismiss with prejudice all claims arising from the circumstances giving rise to this action.

c)      BNSF will develop an engineering plan for the improvement by fortification of the current berm construction on the border of the BNSF and Grant properties made the subject of this litigation. The engineering phase of this work will be completed within 120 days of settlement. The final augmentation of the berm will be completed no longer than nine (9) months after the settlement, weather permitting. The engineering plan and berm refortification will be performed at BNSF's expense. Grant's consultant, Dr. Ron Jarman, will review the engineering plan and provide comments and his approval (not to be unreasonably withheld) of the

same. The engineering plan will involve reconstruction in a manner similar to that depicted on the attached Exhibit "A." Dr. Jarman will be allowed full access to the construction site and will receive full disclosures and access from BNSF regarding all aspects of the construction.

d)      Upon completion of the berm work, BNSF will file in the deed records of the Office of the County Clerk of Tulsa County, Oklahoma of a Notice of Completion of the berm fortification , and will be given a copy of Dr. Jarman's final report to Grant that the construction of the berm was done in accordance with the engineering plan Jarman reviewed and approved.

e)      Grant will execute a covenant running with the land, as follows:

1.      After the berm fortification has been completed, and as long as "tar-like material" ("TLM") remains on Grant's property at the property line, Grant  will indemnify the BNSF against any future surface migration of "tar-like material" ("TLM") from Grant's property onto the BNSF property.  Grant will also indemnify BNSF against any future subsurface migration of TLM from Grant's property onto BNSF property, traceable to the Grant property.   Grant's indemnification as to subsurface migration is limited to the specific areas that BNSF previously excavated and remediated.   This indemnity- surface and subsurface- only concerns any future migration of TLM from Grant's property on to the BNSF property. Grant will covenant that this indemnity shall also run with the land and is binding upon his successors and assigns. This covenant will be recorded with the County Clerk of Tulsa County, Okalahoma. The form of said covenant and indemnity is attached hereto as Exhibit 2 and incorporated herein by reference;

2.      Grant agrees to execute a recorded covenant running with the land and binding upon his successors and assigns, to maintain the reinforced berm located on the BNSF property as long as "tar-like material" ("TLM") remains on Grant's property at the property line. By "maintain," the Parties mean that the berm as refortified, does not allow future migration of TLM (as defined for indemnification purposes in paragraph 8(e)(1))from Grant's property onto the BNSF property. Grant and his successors will also repair any wear and tear, daily degradation of the berm that renders it incompetent to prevent future migration of TLM from Grant's property onto the BNSF's property. Grant will not ensure the competency of the berm in catastrophic

circumstances, nor maintain the berm in catastrophic circumstances. This covenant will be recorded with the County Clerk, Tulsa County, Oklahoma. The form of said covenant and indemnity is attached hereto as Exhibit 2 and incorporated herein by reference

3.   Grant will agree not to prosecute, sue or seek a claim against the BNSF with regard to any contamination on the Grant property in the event of any agency action in the future regarding said material. The BNSF will agree not to prosecute, sue or seek a claim against Grant with regard to any contamination of the BNSF property in the event of any agency action in the future regarding said material, other than as provided in paragraph 8(e)(1) regarding indemnification.

4.   Grant will not be required to bind the interests or obligations of his cotenants.

9.   In consideration of the warranties, representations, and mutual covenants contained in this Agreement, the Parties hereto do hereby RELEASE and HOLD HARMLESS each other as to all claims, known and unknown, relating to the facts giving rise to the Lawsuit, including but not limited to claims for nuisance, trespass, RCRA, Oklahoma Environmental Quality Act, contribution under state and federal common law and environmental laws, contribution under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et. seq. ("CERCLA"), and unjust enrichment. The release includes, is applicable to and is binding on, the shareholders, attorneys, subsidiaries, affiliates, agents, employees, officers, directors, insurers, heirs, assigns, and legal representatives of the Parties hereto to this Agreement. This release shall not apply to contribution claims relating to claims by third parties for personal injury or to claims regarding any other sites, contracts or agreements between the Parties hereto not related to this lawsuit. The release applies only to the parties specifically named above as being released and shall in no way release, discharge or otherwise affect the BNSF's or Grant's claims as against any other persons, including

without limitation, Elise P. Grant Living Trust and any beneficiaries of same, McJunkin Corporation, Rogers Galvanizing Corporation, or any owner or operator of the Grant Property who may have held legal or equitable title to such property prior to 1974, or their officers, directors, insurers, agents, servants, employees or affiliated companies. This release does not affect or extinguish the obligations of the Parties in Section 8 of this Agreement.

10.     The Parties hereto acknowledge that this Agreement does not constitute an admission or concession of liability or wrongdoing by any party to this Agreement, but is intended to facilitate an amicable resolution of the Parties 'disputes. Neither this Agreement, nor the settlement set forth herein shall be construed or used as an admission of any fault, wrongdoing or liability whatsoever by any party to this Agreement. In fact, the Parties hereto deny any fault, wrongdoing or liability. Neither this Agreement nor any of its terms or conditions shall be offered or received in evidence in any proceeding or used in any manner whatsoever as an admission of any wrongdoing of any nature or any liability on the part of any party to this Agreement, or any other person or entity. This Agreement, however, may be used, offered or received in evidence in any proceeding to enforce the Agreement.

11.     Any person executing this Agreement in a representative capacity represents and warrants that he or she is an official representative of the entity or person in whose name he or she is executing this Agreement and that he or she possesses full and complete authority to bind the person or entity to the full and faithful performance of all conditions, terms, provisions, covenants, warranties, and representations contained in this Agreement.

12.     The Parties hereto represent and warrant that (i) they are legally competent to execute this Agreement, (ii) they are represented by attorneys, (iii) they are relying on their own knowledge and the advice of the respective attorneys in making this Agreement, (iv) their respective attorneys have explained the terms to them, (v) they fully understand their rights and obligations under the Agreement, and (vii) they have entered into this Agreement freely, voluntarily and without coercion.

13.     Each of the Parties hereto warrant and represent that such party is the sole owner of the claims released herein and that such party has not assigned or transferred, or purported to assign or transfer, in whole or in part, to any person or entity, any rights claims, obligations, demands, damages, actions or causes of action released pursuant to this Agreement or any portion thereof.

14.     Each of the Parties hereto warrant and represent that such party has not made and will not make any claim under any insurance policy seeking coverage relating to the facts giving rise to the Lawsuit.

16.     The Parties hereto further agree that the provisions of this Agreement are severable. If a court of competent jurisdiction rules that any provision of this Agreement is invalid or unenforceable for any reason, the express intent of the Parties hereto is that all remaining provisions are severable and should remain in force to the greatest extent permitted by law.

17.     This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto.

18.     This Agreement may be executed in two or more counterparts, each of which shall be deemed an original for all purposes, and together shall constitute one and the same document. Telecopied signatures shall be relied on as original signatures in all respects. Each party shall be given a fully-executed original of the Agreement as soon as reasonably practicable.

19. Taxable costs of court and legal fees are to be paid by the party incurring the same.

20. This Agreement shall be governed by and construed in accordance with the laws of the state of Oklahoma, exclusive of principles of conflicts of law.

**ACKNOWLEDGED and AGREED TO on the dates indicated below.**

**THE BNSF RAILWAY COMPANY**

By: [signature]
Name Charles Shewmake
Title VP & General Counsel

Date: 6/23/08

**CHARLES B. GRANT, INDIVIDUALLY AND AS TRUSTEE OF THE CHARLES B. GRANT REVOCABLE TRUST**

______________________________

Date: ________________________

APPROVED AS TO FORM AND SUBSTANCE:

MCLEOD, ALEXANDER, POWEL & APFFEL, P.C

______________________________

David E. Cowen
802 Rosenberg
P.O. Box 629
Galveston, Texas 77553
281-488-7150 Ext. 134
409-763-2481 Ext. 134
409-762-1155 Facsimile

ATTORNEYS FOR THE BNSF RAILWAY COMPANY

19. Taxable costs of court and legal fees are to be paid by the party incurring the same.

20. This Agreement shall be governed by and construed in accordance with the laws of the state of Oklahoma, exclusive of principles of conflicts of law.

**ACKNOWLEDGED and AGREED TO on the dates indicated below.**

**THE BNSF RAILWAY COMPANY**

By: ____________________

Name ____________________

Title ____________________

Date: ____________________

**CHARLES B. GRANT, INDIVIDUALLY AND AS TRUSTEE OF THE CHARLES B. GRANT REVOCABLE TRUST**

[signature]

Date: 19 June 08

APPROVED AS TO FORM AND SUBSTANCE:

MCLEOD, ALEXANDER, POWEL & APFFEL, P.C

____________________

David E. Cowen
802 Rosenberg
P.O. Box 629
Galveston, Texas 77553
281-488-7150 Ext. 134
409-763-2481 Ext. 134
409-762-1155 Facsimile

ATTORNEYS FOR THE BNSF RAILWAY COMPANY

APPROVED AS TO FORM AND SUBSTANCE:

DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

By: ______________________________

Linda C. Martin
320 South Boston Avenue, Suite 500
Tulsa, Oklahoma 74103
(918) 582-1211
(918) 591-5360 (Fax)
**ATTORNEYS FOR DEFENDANT**
**CHARLES B. GRANT and CHARLES B. GRANT REVOCABLE TRUST**

STATE OF TEXAS )
) ss.
COUNTY OF TARRANT )

BEFORE ME, the undersigned Notary Public, on this day personally appeared Charles Shewmake, a duly authorized representative of The BNSF Railway Company, a Delaware corporation, which is licensed to do business in the State of Texas, who being first sworn by me did state under oath that (1) he/she is specifically authorized to execute the foregoing Mutual Release and Settlement Agreement on behalf of the BNSF Railway Company, (2) he/she has read and understands the Mutual Release and Settlement Agreement, and (3) he/she has executed the Mutual Release and Settlement Agreement for the purposes and consideration recited herein.

SUBSCRIBED AND SWORN TO BEFORE ME on this 23rd day of June, 2008.

Vickie Popejoy
Notary Public, State of Texas

My Commission Expires: 9/8/10

VICKIE POPEJOY
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
September 8, 2010

APPROVED AS TO FORM AND SUBSTANCE:

DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

By: ______________________________

Linda C. Martin
320 South Boston Avenue, Suite 500
Tulsa, Oklahoma 74103
(918) 582-1211
(918) 591-5360 (Fax)
**ATTORNEYS FOR DEFENDANT**
**CHARLES B. GRANT and CHARLES B. GRANT REVOCABLE TRUST**

STATE OF TEXAS )
) ss.
COUNTY OF TARRANT )

BEFORE ME, the undersigned Notary Public, on this day personally appeared MR CHARLES BRADY GRANT, a duly authorized representative of The BNSF Railway Company, a Delaware corporation, which is licensed to do business in the State of Texas, who being first sworn by me did state under oath that (1) he/she is specifically authorized to execute the foregoing Mutual Release and Settlement Agreement on behalf of the BNSF Railway Company, (2) he/she has read and understands the Mutual Release and Settlement Agreement, and (3) he/she has executed the Mutual Release and Settlement Agreement for the purposes and consideration recited herein.

SUBSCRIBED AND SWORN TO BEFORE ME on this 19 day of June, 2008.

______________________________
Notary Public, State ~~of Texas~~ Sonora, Mexico

My Commission Expires: No expires in México

Lic. Salvador Antonio Corral Martínez
TITULAR DE LA NOTARIA PUBLICA NUMERO 28
Hermosillo, Sonora, México.

STATE OF ________ )
) ss.
COUNTY OF ________ )

BEFORE ME, the undersigned Notary Public, on this day personally Charles B. Grant, Individually and as Trustee of the Charles B. Grant Revocable Trust who being first sworn by me did state under oath that (1) he is specifically authorized to execute the foregoing Mutual Release and Settlement Agreement on behalf of said Parties hereto, (2) he has read and understands the Mutual Release and Settlement Agreement, and (3) he has executed the Mutual Release and Settlement Agreement for the purposes and consideration recited herein.

SUBSCRIBED AND SWORN TO BEFORE ME on this 19 day of June, 2008.

Notary Public, State of Sonora México

My Commission Expires: No expires in México

Lic. Salvador Antonio Corral Martínez
TITULAR DE LA NOTARIA PUBLICA NUMERO 28
Hermosillo, Sonora, México.

EXHIBIT 1

DESCRIPTION

All that part of the E/2 NE/4 of Section 15, Township 19 North, Range 12 East of the Indian Base and Meridian, Tulsa County, Oklahoma, more particularly described as follows; to-wit:

TRACT "A"

BEGINNING at a point in the south boundary of said E/2 NE/4, 924.31 feet from the southeast corner thereof; thence N 00°10'35" W a distance of 616.97 feet; thence N 89°30'34" E a distance of 479.58 feet; thence S 9°29'00" W a distance of 427.26 feet; thence S 41°43'35" W a distance of 0.00 feet; thence on a curve to the right having a radius of 578.29 feet a distance of 416.16 feet; thence S 7°02'28" E a distance of 10.37 feet; thence S 89°36'07" W a distance of 47.83 feet to the point of beginning containing 239,580 square feet or 5.500 acres.

TRACT "B"

Commencing at the southeast corner of said E/2 NE/4; thence S 89°36'07" W along the south boundary of said E/2 NE/4 a distance of 924.31 feet; thence N 00°10'35" W a distance of 616.97 feet to the POINT OF BEGINNING; thence N 00°10'35" W a distance of 706.74 feet; thence N 89°30'34" E a distance of 599.99 feet; thence S 9°29'00" W a distance of 717.57 feet; thence S 89°30'54" W a distance of 479.58 feet to the point of beginning; containing 381,479 square feet or 8.7575 acres.

TRACT "C"

Commencing at the southeast corner of said E/2 NE/4; thence S 89°36'07" W along the south boundary of said E/2 NE/4 a distance of 426.50 feet; thence N 5°10'35" E a distance of 620.80 feet to the POINT OF BEGINNING; thence S 89°30'34" W a distance of 76.15 feet; thence N 9°29'00" E a distance of 717.57 feet; thence N 89°30'34" E a distance of 76.15 feet; thence S 9°29'00" W a distance of 717.57 feet to the point of beginning; containing 53,818 square feet or 1.2355 acres.

TRACT "D"

Beginning at a point in the south boundary of said E/2 NE/4, 426.50 feet from the southeast corner thereof; thence S 89°36'07" W a distance of 449.98 feet; thence N 7°02'28" W a distance of 10.37 feet; thence N 82°57'32" E a distance of 0.0 feet; thence on a curve to the left having a radius of 578.29 feet a distance of 416.16 feet; thence N 9°29'00" E a distance of 427.26 feet; thence N 89°30'34" E a distance of 76.15 feet; thence S 5°10'35" W a distance of 620.80 feet to the point of beginning; containing 85,643 square feet or 1.966 acres.

CERTIFICATE

The undersigned, Registered Professional Engineers and Land Surveyors, hereby certify that we have carefully and accurately surveyed the above described tract of land, and that this plat is a true and correct representation of said survey.

Dwg. Reg. No.: 74-DM48-10163
Scale: 1" = 100'
Date: July 22, 1974

MANHUR-DAUBERT-WILLIAMS, INC.

By [signature]

Grant 40



Exhibit "A"

Ground Line
6"Stone
2'
Berm
2'
1'

Cross-sectional View

*Engineering Services - Kansas City*
*04/24/08*

erm.dgn 4/24/2008 2:04:20 PM

EXHIBIT
A

**ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT**

This Agreement is entered into as of June __, 2008, by and between the BNSF Railway Company, a Delaware Corporation (hereinafter "BNSF") and Charles B. Grant, individually and as Trustee for the Charles B. Grant Revocable Trust, and on behalf of said Trust (collectively sometimes referred to as "Grant").

**ARTICLE 1 RECITALS**

1.01 BNSF is a Delaware corporation, which is licensed to do business in the State of Oklahoma. BNSF is the owner of the property known as the Cherokee Rail Yard in Tulsa, Oklahoma bordered on the east by property owned, in part, by Grant more particularly described as Tracts A and B on the attached Exhibit 1(incorporated herein by reference) (hereinafter "Grant Property").

1.02 BNSF has asserted that a tar-like material migrated from the Grant Property onto the BNSF's Cherokee Rail Yard and has alleged damages resulting therefrom. The BNSF also asserted that it constructed a barrier berm on the border of property belonging to the BNSF, more particularly described as Tract C on the Attached Exhibit 1. The location and dimensions of the berm located on said Tract C are depicted on the attached Exhibit 2 incorporated herein and made a part hereof for all purposes (hereinafter referred to as the "BNSF Berm").

1.03 BNSF filed suit against Grant in the United States District Court for the Northern District of Oklahoma (C.V. NO. 03-CV-162-P(J) (the "Lawsuit").

1.04 Without admitting liability but only to purchase peace and avoid the costs of further litigation, the Parties agreed to settle all disputes by and between them. The settlement is filed on record in the papers of the Lawsuit.

**Initials:**

________ ________

ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT
Between Charles B. Grant, Individually and as Trustee of the Charles B. Grant Revocable Trust and the BNSF Railway Company

Page 1 of 6

EXHIBIT 2

1.05 In furtherance of and as additional consideration for said settlement between the parties, Grant has agreed to the recordation of this ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT in the deed records of the County Clerk of Tulsa County, Oklahoma.

1.06 The parties further intend that this Agreement constitute an independent obligation between them and that it be separate from the parties' mutual rights and obligations as described in the provisions of the Settlement in the Litigation.

1.07 As a part of the settlement of the Litigation, the BNSF Berm will be re-fortified by BNSF.

## ARTICLE 2 COVENANT TO MAINTAIN THE BNSF BERM

2.01 At such time as the BNSF Berm re-fortification is completed by BNSF (upon Notice of Completion described in 2.02 below), and as long as tar-like material remains at the property line between the Grant and BNSF Properties, Charles B. Grant, individually, and as Trustee of the Charles B. Grant Revocable Trust, and on behalf of said Trust, their heirs, successors and assigns, warrant that they shall:

a. Maintain the re-fortified BNSF Berm located on the BNSF property.

b. By "maintain," the Parties mean that the BNSF Berm, as refortified, does not allow future migration of tar-like material from Grant's property onto the BNSF property;

c. By "future migration", the Parties mean and said meaning shall be limited to that term as defined for indemnification purposes in paragraph 3.01 of this Agreement;

d. Repair any wear and tear, daily degradation of the BNSF Berm that renders it incompetent to prevent future migration of tar-like material from Grant's property onto the BNSF's property.

e. This indemnity and covenant only concerns any future migration of tar-like material from Grant's property onto the BNSF property.

**Initials:**

______ ______

ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT
Between Charles B. Grant, Individually and as Trustee of the Charles B. Grant Revocable Trust
and the BNSF Railway Company

Page 2 of 6

f. Grant will not be required under this Agreement to ensure the competency of the berm in catastrophic circumstances, nor maintain the berm in catastrophic circumstances.

2.02 Upon the filing by BNSF in the deed records of the Office of the County Clerk of Tulsa County, Oklahoma of a Notice of Completion of the BNSF Berm re-fortification, this covenant shall run with the land and be binding on all heirs, successors and assigns of Charles B. Grant and the Charles B. Grant Revocable Trust and any person or entity acquiring title or claiming title in the Grant Property by, through or under them in the future and shall be enforceable by BNSF, its successors and assigns so long as tar-like material remains at the property line between the Grant and BNSF properties.

2.03 The Parties do not intend to bind the interest of any current owner of the Grant Property described herein not made a party hereto.

**ARTICLE 3 INDEMNITY**

**3.01 AS LONG AS TAR-LIKE MATERIAL REMAINS ON GRANT'S PROPERTY AT THE PROPERTY LINE WITH THE BSNF RAIL YARD, AND UPON FILING A NOTICE OF COMPLETION OF THE RE-FORTIFICATION OF THE BNSF BERM, CHARLES B. GRANT, INDIVIDUALLY AND AS TRUSTEE OF THE CHARLES B. GRANT REVOCABLE TRUST, AND ON BEHALF OF SAID TRUST, THEIR HEIRS, SUCCESSORS AND ASSIGNS, AGREE TO INDEMNIFY, DEFEND, AND HOLD THE BNSF HARMLESS AGAINST ALL CLAIMS, DAMAGES, AND LIABILITIES OF WHATEVER NATURE, FORESEEN OR UNFORESEEN, UNDER ANY FEDERAL,**

**Initials:**

______ ______

ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT
Between Charles B. Grant, Individually and as Trustee of the Charles B. Grant Revocable Trust
and the BNSF Railway Company

Page 3 of 6

**STATE OR LOCAL LAW OR REGULATION, STATUTORY OR UNDER COMMON LAW, INCLUDING CLAIMS FOR STRICT LIABILITY, FOR THE FOLLOWING:**

**A. ANY FUTURE SURFACE MIGRATION OF TAR-LIKE MATERIAL FROM GRANT'S PROPERTY ONTO THE BNSF PROPERTY.**

**B. GRANT WILL ALSO INDEMNIFY BNSF AGAINST ANY FUTURE SUBSURFACE MIGRATION OF TAR-LIKE MATERIAL FROM GRANT'S PROPERTY ONTO BNSF PROPERTY, TRACEABLE TO THE GRANT PROPERTY.**

**C. GRANT'S INDEMNIFICATION AS TO SUBSURFACE MIGRATION IS LIMITED TO THE SPECIFIC AREAS THAT BNSF PREVIOUSLY EXCAVATED AND REMEDIATED LOCATED WITHIN TRACT C OF THE ATTACHED EXHIBITS 1 AND 2.**

**D. GRANT WILL COVENANT THAT THIS INDEMNITY SHALL ALSO RUN WITH THE LAND AND IS BINDING UPON HIS HEIRS, SUCCESSORS AND ASSIGNS AND ANYONE CLAIMING TITLE OR ACQUIRING TITLE IN THE GRANT PROPERTY BY, THROUGH OR UNDER GRANT AND SHALL BE ENFORCEABLE BY BNSF, ITS SUCCESSORS AND ASSIGNS AS LONG AS TAR-LIKE MATERIAL REMAINS ON GRANT'S PROPERTY AT THE PROPERTY LINE WITH THE BNSF RAIL YARD,.**

**ARTICLE 4 MISCELLANEOUS PROVISIONS**

4.01 This Agreement and the legal relations between the parties shall be governed by and construed in accordance with the laws of the State of Oklahoma.

4.02 If any provision hereof is found by a court of competent jurisdiction to be in violation of the law or unenforceable, the remaining valid and enforceable provisions hereof shall remain in full force and effect.

4.03 This Agreement shall be recorded in the deed records of the Office of the County Clerk of Tulsa County, Oklahoma and shall be binding on all persons and entities acquiring ownership, in whole

**Initials:**

______ ______

ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT
Between Charles B. Grant, Individually and as Trustee of the Charles B. Grant Revocable Trust
and the BNSF Railway Company

Page 4 of 6

or part, of the Grant property by, through or under Charles B. Grant or the Charles B. Grant Revocable Trust.

**ACKNOWLEDGED and AGREED TO on the dates indicated below.**

**THE BNSF RAILWAY COMPANY**

By: [signature]

Name Charly Shewmake

Title VP + General Counsel

Date: 6/23/08

**HARLES B. GRANT, INDIVIDUALLY AND AS TRUSTEE OF THE CHARLES B. GRANT REVOCABLE TRUST**

_______________________________

Date: _______________________

**STATE OF TEXAS** )
) **ss.**
**COUNTY OF TARRANT** )

BEFORE ME, the undersigned Notary Public, on this day personally appeared Charles Shewmake, a duly authorized representative of The BNSF Railway Company, a Delaware corporation, which is licensed to do business in the State of Texas, who being first sworn by me did state under oath that (1) he/she is specifically authorized to execute the foregoing ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT on behalf of the BNSF Railway Company, (2) he/she has read and understands the Mutual Release and Settlement Agreement, and (3) he/she has executed the ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT for the purposes and consideration recited herein.

SUBSCRIBED AND SWORN TO BEFORE ME on this 23rd day of June, 2008.

Vickie Popejoy

Notary Public, State of Texas

My Commission Expires: 9/8/10

VICKIE POPEJOY NOTARY PUBLIC STATE OF TEXAS EXPIRES September 8, 2010

**Initials:**

_______ _______

**ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT**
**Between Charles B. Grant, Individually and as Trustee of the Charles B. Grant Revocable Trust and the BNSF Railway Company**

**Page 5 of 6**

JUN. 16. 2008 3:37PM NO. 4057 P. 7

or part, of the Grant property by, through or under Charles B. Grant or the Charles B. Grant Revocable Trust.

**ACKNOWLEDGED and AGREED TO on the dates indicated below.**

**THE BNSF RAILWAY COMPANY**

By: ______________________

Name ______________________
Title ______________________

Date: ______________________

**CHARLES B. GRANT, INDIVIDUALLY AND AS TRUSTEE OF THE CHARLES B. GRANT REVOCABLE TRUST**

[signature]

Date: 19 June 08

**STATE OF TEXAS** )
) ss.
**COUNTY OF TARRANT** )

BEFORE ME, the undersigned Notary Public, on this day personally appeared MR CHARLES BRADY GRANT, a duly authorized representative of The BNSF Railway Company, a Delaware corporation, which is licensed to do business in the State of Texas, who being first sworn by me did state under oath that (1) he/she is specifically authorized to execute the foregoing ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT on behalf of the BNSF Railway Company, (2) he/she has read and understands the Mutual Release and Settlement Agreement, and (3) he/she has executed the ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT for the purposes and consideration recited herein.

SUBSCRIBED AND SWORN TO BEFORE ME on this 19 day of June, 2008.

[signature]
Notary Public, ~~State of Texas~~ Sonora, Mexico

My Commission Expires: No expires in México

Lic. Salvador Antonio Corral Martinez
TITULAR DE LA NOTARIA PUBLICA NUMERO 28
Hermosillo, Sonora, México.

**Initials:**

______ ______

ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT
Between Charles B. Grant, Individually and as Trustee of the Charles B. Grant Revocable Trust and the BNSF Railway Company

Page 5 of 6

06/20/2008 FRI 10:49 FAX 004

STATE OF )
) ss.
COUNTY OF )

BEFORE ME, the undersigned Notary Public, on this day personally Charles B. Grant, Individually and as Trustee of the Charles B. Grant Revocable Trust who being first sworn by me did state under oath that (1) he is specifically authorized to execute the foregoing ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT on behalf of said Parties hereto, (2) he has read and understands the Mutual Release and Settlement Agreement, and (3) he has executed the ENVIRONMENTAL COVENANT AND INDEMNITY AGREEMENT for the purposes and consideration recited herein.

SUBSCRIBED AND SWORN TO BEFORE ME on this 19 day of June, 2008.

Notary Public, State of Sonora, México

My Commission Expires: No expires in México

AFTER RECORDING RETURN TO:

**David E. Cowen**
**McLeod, Alexander, Powel & Apffel, P.C.**
**802 Rosenberg**
**P.O. Box 629**
**Galveston, Texas 77553**
**281-488-7150 Ext. 134**
**409-763-2481 Ext. 134**
**409-762-1155 Facsimile**

**Initials:**

______ ______

EXHIBIT 1

DESCRIPTION

All that part of the E/2 NE/4 of Section 15, Township 19 North, Range 12 East of the Indian Base and Meridian, Tulsa County, Oklahoma, more particularly described as follows; to-wit:

TRACT "A"

BEGINNING at a point in the south boundary of said E/2 NE/4, 924.31 feet from the southeast corner thereof; thence N 00°10'35" W a distance of 616.97 feet; thence N 89°30'34" E a distance of 479.58 feet; thence S 9°29'00" W a distance of 427.26 feet; thence S 41°43'35" W a distance of 0.00 feet; thence on a curve to the right having a radius of 578.29 feet a distance of 416.16 feet; thence S 7°02'28" E a distance of 10.37 feet; thence S 89°36'07" W a distance of 47.83 feet to the point of beginning containing 239,580 square feet or 5.500 acres.

TRACT "B"

Commencing at the southeast corner of said E/2 NE/4; thence S 89°36'07" W along the south boundary of said E/2 NE/4 a distance of 924.31 feet; thence N 00°10'35" W a distance of 616.97 feet to the POINT OF BEGINNING; thence N 00°10'35" W a distance of 706.74 feet; thence N 89°30'34" E a distance of 599.99 feet; thence S 9°29'00" W a distance of 717.57 feet; thence S 89°30'54" W a distance of 479.58 feet to the point of beginning; containing 381,479 square feet or 8.7575 acres.

TRACT "C"

Commencing at the southeast corner of said E/2 NE/4; thence S 89°36'07" W along the south boundary of said E/2 NE/4 a distance of 426.50 feet; thence N 5°10'35" E a distance of 620.80 feet to the POINT OF BEGINNING; thence S 89°30'34" W a distance of 76.15 feet; thence N 9°29'00" E a distance of 717.57 feet; thence N 89°30'34" E a distance of 76.15 feet; thence S 9°29'00" W a distance of 717.57 feet to the point of beginning; containing 53,818 square feet or 1.2355 acres.

TRACT "D"

Beginning at a point in the south boundary of said E/2 NE/4, 426.50 feet from the southeast corner thereof; thence S 89°36'07" W a distance of 449.98 feet; thence N 7°02'28" W a distance of 10.37 feet; thence N 82°57'32" E a distance of 0.0 feet; thence on a curve to the left having a radius of 578.29 feet a distance of 416.16 feet; thence N 9°29'00" E a distance of 427.26 feet; thence N 89°30'34" E a distance of 76.15 feet; thence S 5°10'35" W a distance of 620.80 feet to the point of beginning; containing 85,643 square feet or 1.966 acres.

CERTIFICATE

The undersigned, Registered Professional Engineers and Land Surveyors, hereby certify that we have carefully and accurately surveyed the above described tract of land, and that this plat is a true and correct representation of said survey.

Dwg. Reg. No.: 74-DM48-10163
Scale: 1" = 100'
Date: July 22, 1974

MANSUR-DAUBERT-WILLIAMS, INC.

By [signature]

PRE-EXCAVATION CONDITIONS
SCALE IN FEET
100 0 100 200
PROPERTY BOUNDARY
788 CUBIC YARDS (ESTIMATED)
990 CUBIC YARDS (ESTIMATED)
1,580 CUBIC YARDS (ESTIMATED)
SPIN GALV
AREA C
AREA D
ONEOK P/L
SUNCO P/L
S. UNION
TYPICAL CROSS SECTION FOR REMOVAL AND BACKFILL
CROSS SECTIONS OF EXISTING CONDITIONS AND APPROXIMATE LIMITS OF EXCAVATION
CAP LIMITS AND LOCATION
EXHIBIT
2
FIGURE
1
DESIGNED
DRAWN
CHECKED
DATE
MT
KAS
BURLINGTON NORTHERN AND SANTA FE RAILWAY CO.
TULSA, OKLAHOMA
CHEROKEE YARD
SITE MAP
Environmental Resources Management
5950 South Willow Drive
Suite 200
Greenwood Village, Colorado 80111-5144
REVISION
DESCRIPTION
DATE

